## SCHAFF v. MOSS. (No. 8276.)

(Court of Civil Appeals of Texas. Dallas. Feb. 7, 1920. Rehearing Denied March 20, 1920.)

1. RAILROADS ☞278(2)—DEGREE OF CARE REQUIRED OF PERSON UNLOADING CAR DEFINED.

It is the duty of a person unloading a car, when a switching crew undertakes to move it, to exercise that degree of care that a person of ordinary prudence would commonly exercise under the same circumstances to avoid injury to himself.

2. RAILROADS ☞282(9)—CONTRIBUTORY NEGLIGENCE OF PERSON UNLOADING CAR MOVED BY SWITCH ENGINE QUESTION FOR JURY.

Whether a person unloading a car was guilty of contributory negligence in remaining in the car after a switch engine had coupled on to it and moved it to the main track and had stopped before "kicking" it onto another track, where a collision with another car caused injury to him, held for the jury.

3. EVIDENCE ☞474(8)—PERSON IN BOX CAR BEING SWITCHED WAS QUALIFIED TO TESTIFY AS TO SPEED.

A person in a box car when the same was being "kicked" by a switch engine was competent to testify as to the speed of the box car.

4. RAILROADS ☞282(9)—NEGLIGENCE IN MOVING CAR BEING UNLOADED QUESTION FOR JURY.

Whether switching crew exercised ordinary care to ascertain plaintiff's presence in a car which he was unloading before coupling on to and moving same held for the jury.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by J. T. Moss against O. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Chas. C. Huff, of Dallas, and Dinsmore, McMahan & Dinsmore, of Greenville, for appellant.

B. Q. Evans, of Greenville, for appellee.

RASBURY, J. This is an appeal from the judgment of the court below entered upon verdict of the jury awarding appellee $2,000 damages for personal injuries alleged to have been inflicted by appellant in negligently moving a freight car while appellee was engaged therein in removing cotton seed therefrom for his employer, Texas Refining Company.

The facts disclosed by the record necessary to a consideration of the issues presented on appeal are these: Appellee, at the time he was injured, was employed as a laborer by the Texas Refining Company at Greenville. Appellant has a side track reaching the plant of the Texas Refining Company, which in turn branches, one branch reaching and serving the seed and hull houses, the other reaching the meal house, scales, and refinery. A car of cotton seed had been placed adjacent to the seed house on the tracks and had been unloaded, save several bushels of scattering seed, which appellee was directed to remove by those in charge for the Texas Refining Company. While engaged in sweeping the seed together a switch engine operated by appellant's employés backed in on the tracks and coupled with the car in which appellee was, and began moving it back to the main line of the side track. It was appellant's custom to move cars while being unloaded, generally for the purpose of placing another car on the track beyond the car being unloaded, and appellee assumed that was the purpose of appellant's servants when they commenced moving the car in which he was at work, and, so assuming, he continued sweeping the seed in the car together. Appellant's agents, however, desired to remove the car permanently, they having been informed by one in charge of unloading the car for the Texas Refining Company that the car had been unloaded and all employés out of the car. As matter of fact appellee was in the car at the time, and no one, according to his testimony, had notified him of the purpose to move the car permanently. Relying upon such information, the car was moved to the main line

of the side track and there "kicked"—that is, given considerable momentum, uncoupled from the engine, and permitted to run on to the other branch of the side track that reached the scales and mill of the Texas Refining Company. On its course the car came in contact with another car on the track with sufficient force to throw appellee a distance of about 15 feet and seriously injure him; at least such was his contention in the court below, the verity of which is not made an issue here. The testimony further shows that when the car was moved from the branch track onto the main side track it stopped. According to appellee's testimony, it "did not stop long, just a second or so, a minute maybe. * * * It might have been a second or two or it might have been a minute or two; I do not know; it was a short time." When the car stopped appellee made no effort to get out for the reason that he desired to finish his work. He did say, however, that had he been notified of the purpose for which the car was being moved, he would not have remained in the car. Buck Morris, in charge of the "switch crew," also testified that before the car in which appellee was could be "kicked" on to the other tracks the engine and car had to be stopped in order to turn the switch.

[1, 2] It was the contention of appellant in the court below that the evidence without dispute disclosed that appellee knew it was unsafe to remain in the car while it was being moved, and that the car stopped, after it started, long enough for appellee to leave the car, and that in failing to leave the car appellee negligently caused or contributed to his injury, and was hence not entitled to recover. In support of such contention appellant seasonably requested and the court refused a peremptory instruction in its behalf. The court's action in the respect recited is assigned as error. If it may be said that the car halted a sufficient length of time for appellee to safely leave same, that fact, it occurs to us, is not the sole fact to be considered in determining whether the evidence presents negligence as matter of law on the part of appellee. Appellee and two other witnesses, one of them the engineer in charge of the switch engine, testified that it was the custom to move cars from the track adjacent to the seed house while the employés of Texas Refining Company were engaged in unloading same. Appellee also testified that no one warned him of the purpose to "kick" the car onto another track, which fact seems to be without contradiction, and that, if he had been so warned, he would not have remained in the car. On the contrary, he says he assumed the car was merely being moved in order to set in another car ahead of it according to the usual custom in such cases, and as a consequence was without any knowledge or notice of the danger he was to be subjected to. It was his duty when the engine was coupled to the car in which he was at work to exercise that degree of care that persons of ordinary prudence would commonly exercise under the same or similar circumstances. The degree of care to be exercised was of course proportionate to the danger indicated by the situation and reasonably to be foreseen therefrom by an ordinarily prudent person. His situation, in the light of the custom we have detailed, was not necessarily one of danger or one which required him to leave the car, if the jury believed the evidence concerning the custom of appellant, and hence in remaining in the car after the engine stopped he did that which an ordinarily prudent person would have done under the same or similar circumstances. As a consequence the court did not, in our opinion, err in refusing the requested peremptory instruction.

[3] While appellee was being examined in chief by his counsel, and after reciting his presence in the car and the fact that he was thrown upon the floor thereof when it came in contact with the other, his counsel requested him to state, judging from the impact of the cars and the distance he was thrown, what speed the car was, in his opinion, making at the time. To the question counsel for appellant objected on the ground that appellee had not qualified in that respect, and any answer he might make would as a consequence be speculative, conjectural, and a guess. The objection was overruled, and the witness answered he could hardly tell, but that it must have been going at the rate of 10, 12, or 15 miles an hour, by the way it struck the other car, and that it shattered his nerves so he was unconscious for a little while before he "came to," etc. We conclude the court did not err in admitting the testimony. The opinion of nonexperts as to "time, quantity, number, speed, distance, and the like" derived from actual observation is generally held admissible, subject to the qualification that the witness "is shown to have been in a position * * * to enable him to form an estimate." Sabine & East Tex. Ry. Co. v. Brousard, 69 Tex. 617, 7 S. W. 374. In reviewing the action of the lower court in permitting witnesses to testify as to the rate of speed a train was moving when it passed a crossing, it was said that, "if none but experts could testify as to the speed of moving trains, it would usually be the case that none but railway employés who were present could testify," and that proof of such fact did not require expert testimony. Galveston, H. & S. A. Ry. Co. v. Sullivan, 42 S. W. 568. In the case at bar appellee based his opinion

upon the force with which the car he was in collided with the other car and the distance he was thrown by the impact. Those facts show him, in our opinion, to have been in a position to form such an estimate of the speed of the car as to take his opinion to the jury in order that they might attach to it such weight or sufficiency as in their opinion the facts warranted.

Appellant further contends that the court erred in presenting to the jury in form of the usual interrogatory the issue as to whether appellee had an opportunity, after appellant's servants began moving the car, to leave same before the collision occurred, for the reason that the evidence shows without dispute that he did have such opportunity. As we have indicated at another point in this opinion, whether appellee had opportunity to leave the car when it halted for the short period of time shown by the evidence is not conclusive on the issue of contributory negligence, since there were other circumstances already detailed which the jury could accept as justification for remaining in the car; in short, that the facts did not disclose negligence as matter of law. We are inclined to the opinion, however, that the question was too restricted in scope, in that it merely required the jury to say whether appellee could have left the car during the period it halted, while the evidence authorized the trial judge to couple with it the further inquiry as to whether, in the light of the custom shown by the evidence, it was negligence for appellee to remain in the car, even though he had opportunity and time to leave same. That restriction, however, was favorable to appellant, and no objection to it in that respect besides is urged.

[4] It is also urged that the court erred in refusing to strike out the finding of the jury that appellant's servants did not exercise ordinary care to ascertain appellee's presence in the car before moving it. We conclude the assignment should be overruled. The evidence in ultimate analysis shows that appellant's agents relied upon the statement of the superintendent of the Texas Refining Company that no one was in the car, and who also testified that he directed appellee to get out of the car. Appellee denies that any one notified him to get out. It also appears from the evidence of the general manager of the Texas Refining Company that he directed appellee "to get back in the car, that the switch engine was gone to do some other switching," and sweep together the scattered seed upon the floor. The evidence being as we have briefly indicated, it is obvious in our opinion, that whether appellant exercised ordinary care in the respect stated was an issue of fact.

The judgment is affirmed.